# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LACEY AND SONYA SMYTH

       Plaintiffs,

v.                                              Civil No. 02-0584 WJ/JHG

RELIABLE CHEVROLET, INC.

       Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING STAY AND COMPELLING ARBITRATION

THIS MATTER comes before the Court upon Defendant's First Amended Motion For Order to Arbitrate and to Stay Pending Arbitration, filed December 13, 2002 (**Doc. 23**).[1]  The complaint alleges violations of state and federal statutes dealing with motor vehicles, and common law fraud.  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and will be granted.

### Background

Plaintiffs, a mother and her teen-age daughter, purchased a 2000 Mercury Cougar vehicle from Defendant in November 2001. Among the papers Plaintiffs signed in order to seal the deal was a Buyer's Order Agreement ("Buyer's Order") for the purchase of the vehicle, which listed

---

[1] Defendant's original motion (Doc. 15) included a request for alternative relief of recission and dismissal. This alternative portion was stricken by the Court as violating the Court's September 13, 2002 Order limiting discovery to the issue of whether an agreement to arbitrate exists. (Doc. 18).  Plaintiffs' response was filed to the original motion, but is applicable to the amended motion as well.

the base price and other costs, such as transfer fees and taxes, which made up the total purchase price of the car.  Pltffs' Ex. B.  On the back of the Buyer's Order in small but bold print is an arbitration provision mandating arbitration for "[a]ny dispute between Buyer and Dealership arising out of this purchase."  Plaintiffs also signed Retail Installment Sale Contract ("Installment Loan Contract") to finance the car. The Installment Loan Contract does not contain an arbitration provision.  Defendant describes this document as a "generic and standardized chattel paper form" used only where financing is arranged.[2]  It contains, among other items, a breakdown of the payment terms for the vehicle, based on the amount financed.  Pltffs' Ex. C.  Defendant seeks an order requiring Plaintiffs to arbitrate their claims, under both the New Mexico Uniform Arbitration Act, § 44-7A-3 NMSA (2002) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.[3]  Plaintiffs contend that the arbitration clause in the Buyer's Order is not binding under New Mexico contract law.  They argue that the Installment Loan Contract, is the controlling document because it was signed after the Buyer's Order.

## Discussion

Arbitration cannot be required of parties unless they have first agreed to arbitrate.  <u>Santa Fe Technologies v. Argus Networks, Inc. et al.</u>, 131 N.M. 772, 788 (Ct.App. 2002)  (court's

---

[2]  The finance contracts are sometimes assigned by a dealer to a lender to obtain financing.

[3]  § 44-7A-7 states: (a) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.  (b) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

The FAA provides for a stay in federal actions where a proceeding is referable to arbitration under the parties' agreement.  9 U.S.C. § 3.

inquiry is whether the parties have agreed to arbitrate the matter under dispute)(citing to § 44-7-1 NMSA); Campbell v. Millenium Ventures, LLC., 132 N.M. 733, 736 (Ct.App. 2002) ("where provision for arbitration is disputed, the court's function is to determine whether there is an agreement to arbitrate").

Plaintiffs' position rests on the theory that the two relevant documents merged into the Installment Loan Contract, which did not have a provision, and thus the parties did not agree to arbitrate. Plaintiffs also suggest that the arbitration provision is invalid as part of the Buyer's Order because it was "buried" on the back of the Buyer's Order in small print, was the next to the last document the dealer gave Plaintiffs to sign (out of seventeen documents total), and was not specifically pointed out and explained by the dealer. However, the mere fact that contract language is boilerplate does not render it without effect. Amoco Rocmount Co., et al v. Anschuytz Corp et al., 7 F.3d 909 (10th Cir. 1993) (citation omitted). Such a provision would be unenforceable *per se* only when the contract or provision is unfair. H.J. Guthmann v. La Vida Llena, 103 N.M. 506, 509 (1985). I find neither the contract nor the arbitration provision to be unfair simply because a dealer did not take time to bring the customer's attention, or separately explain, the arbitration provision.[4] Smith v. Price's Creameries, 98 N.M. 541, 545 (1982) ("[e]ach party to a contract has a duty to read and familiarize himself with its contents before he signs and delivers it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby").

---

[4] As Defendant points out, an agreement to arbitrate in the present situation is distinguishable from a situation where such an agreement is legally unenforceable. See, e.g., Lisanti v. Alamo Title Ins. of Tex., 132 N.M. 750 (2002) (finding arbitration requirement unenforceable because it was mandated by a New Mexico state insurance regulation, not truly by agreement), pet. for cert. filed, 71 USLW, Dec. 18, 2002.

While both parties maintain that the contract language is unambiguous,[5] their interpretations of what the language "clearly" says is diametrically opposed.  Language in the Installment Loan Contract states

> By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

and then later, "[t]his contract contains the entire agreement between you and us relating to this contract."  Pltffs' Ex. C.  Plaintiffs rely on this language as a kind of "integration" or "merger" provision, contending that because the Installment Loan Contract was signed a few minutes after the Buyer's Order, it superseded all other agreements, and all of the parties' agreements and negotiations became merged in that document --thus effectively invalidating the arbitration provision contained in the Buyer's Order.

Plaintiffs' "merger" interpretation (and the only interpretation that would accommodate a finding that the arbitration provision in the Buyer's Order is invalid) is based on the assumption that the purchase of the vehicle -- although it involved the signing of seventeen different documents -- was based on a "single written memorial."  However, an analysis under New Mexico contract principles cannot sustain Plaintiffs' theory.  Unambiguous contracts should be interpreted to make sense. N.M. Physicians Mutual Liability Co. v. LaMure, 116 N.M. 92, 95 (1993). Plaintiffs signed the Installment Loan Contract immediately after they signed the Buyer's Order. However, the timing of the Plaintiffs' signature is of no consequence here. Plaintiffs signed all seventeen documents at the dealership at the same sitting, and the two documents were signed

---

[5] Despite the parties' agreement that the contract language is not ambiguous, whether an ambiguity exists is a question of law to be decided by the court. Villella Enterprises, Inc. v. Young, 108 N.M. 33, 38 (1988).  However, my conclusion would also be that the language is not ambiguous.

within moments of each other, clearly as part of the same transaction process. I find no evidence that the parties intended that the two documents in question should be merged. See RTC v. Ocotillo W. Joint Venture, 840 F.Supp.1463, 1482 (D.N.M. 1993) (the object of all rules of interpretation is to arrive at the intention of the parties as it is expressed in the contract);[6] Levenson v Mobley, 106 N.M. 399, 501-02, 744 P.2d 174 (1987) (where terms of an agreement are plainly stated, the intentions of the parties must be ascertained from the language used).

In reaching the intent of the parties, courts rely on various rules of interpretation, such as giving effect to the main purpose of the instrument, and interpreting the contract so as to make it effective and reasonable. Joint Venture, 840 F.Supp. at 1482. Relying on such rules, I find that Defendant's position is the only one that makes sense and is consistent with New Mexico contract law. The Buyer's Order was not relegated to the limbo of extrinsic evidence by virtue of the fact that it was signed prior to the Installment Loan Contract (as Plaintiffs seem to argue, Resp. at 4-5). Rather, I find that the Buyer's Order and the Installment Loan Contract did not merge, but remain two separate contracts, signed for the same transaction but having different purposes. Cmp., Boatwright v. Howard,102 N.M. 262, 264 (1985) (two instruments not merged although they were executed by the same parties and concerned the same subject matter, where there was no evidence to indicate that the parties intended for them to be merged and where second

---

[6] In interpreting the contract, Plaintiffs urge the Court to construe the language of the Buyer's Order and Installment Loan Contract against the Defendant as the drafter. However, Plaintiffs would be afforded this favorable presumption only where ambiguities exist. Plaintiffs have represented, and the Court agrees, that the contract language is not ambiguous. Dumais v. American Golf Corp., 299 F.3d 1216 (10th Cir. 2002) (recognizing the well-accepted rule that *ambiguities* in contracts are construed against the drafter) (emphasis added); Western Farm Bureau v. Carter, 127 N.M. 186, 979 (1999).

document was entered into about four months after the first).

Although both documents contain some information which is identical, each document clearly speaks to a different purpose. The Buyer's Order is essentially a purchase agreement between the dealer and buyer presenting the terms on which the dealership sells vehicles to customers. It includes a breakdown of some figures which are not reflected in the Installment Loan Contract.[7] The Installment Loan Contract is a finance contract which sets out the details of the payback terms, i.e., amount financed, interest rates, and monthly payment schedules. The plain language in the Installment Loan Contract does not exclude or otherwise modify any provision in the Buyer's Order. It says "[t]his contract contains the entire agreement between you and us relating to *this contract*." (emphasis added). It also states that a signature on "this contract" is an agreement to buy the vehicle *"on credit* under the agreements on the front and back of *this contract*." (emphasis added). Thus, the Installment Loan contract language does not deny effect to any provision in any *other* contract, but, as the language expressly states, relates only to that particular contract. Further, that agreement does not encompass the entire transaction relating to the purchase of the car, but only the agreement made on the "front and back" of the contract -- i.e., the agreement made specifically as to the financing of the car.

The language of the Installment Loan Contract and the Buyer's Order can be read together and construed without conflicting or being susceptible to different interpretations. C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 509 (1991) (New Mexico courts long have held that the question of whether a contractual term or provision is susceptible to reasonable but

---

[7] The breakdown includes any "extras" a customer might purchase, such as a service contract or maintenance agreement, any trade-in value, security locks, factory rebates where applicable, title, license and registration fees. Pltffs' Ex. B.

conflicting meanings, i.e., whether there is ambiguity, is one of law).  The most sensible interpretation is that the Buyer's Order is an agreement between the *buyer* and the *dealership,* where parties must resolve any disputes arising out of the car purchase.[8]  On the other hand, the Installment Loan Contract governs the financing of the car, is an agreement between *buyer* and *creditor*, and does not require arbitration to resolve disputes between the parties.  The fact that the creditor may or may not be the dealer does not modify or otherwise affect the separate purposes of the two documents -- an agreement between the buyer and dealership is not necessarily the same as an agreement between the buyer and creditor. See In re Villa West Assoc., 146 F.3d 798, 803 (10th Cir. 1998) ("Where two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together to determine the intent, rights, and interests of the parties.") (applying Kansas law); Mayberry v. Ememessay, Inc., 201 F.Supp. 2d 687, 692 (D.C.W.D. Va. 2002) (several documents relating to the credit sale of single automobile required to be read together because they were part of the sale process) (applying Virginia law).  Arbitration could be required to resolve disputes arising from the purchase of the car, but not from the financing of the car.[9]

---

[8] The language in the Buyer's Order states that "[a]ny dispute between *Buyer and Dealership* a*rising out of this purchase* will be decided by arbitration. . . ." (emphasis added). The Buyer's Order is thus limited to issues that arise between the *buyer* and *dealership*, and involve the purchase of the car (as opposed to the financing). See Santa Fe Technologies v. Argus Networks, Inc. et al., 131 N.M. 772, 788  (Ct.App. 2002) (when a reasonable relationship between the subject matter of the dispute and the underlying agreement exists, the dispute is within the arbitration provision and should be arbitrated) (citing to § 44-7-1)

[9] Plaintiffs' interpretation offers a rather incongruous result: customers who pay cash for cars would be required to arbitrate any disputes under the terms of the Buyer's Order, but those who obtain financing would not (since under Plaintiffs' theory, the Installment Loan Contract

In an attempt to undermine Defendant's representation that the Installment Loan Contract is a standardized form which is routinely used for credit applications, Plaintiffs offer samples of finance contracts used by area dealerships, some of which do not contain arbitration provisions. The effort is pointless. The fact that other dealerships use some version of a standardized form, although not exactly the one used by Reliable, actually underscores Defendant's position regarding the sole purpose of the finance contract.

Accordingly, I find that, notwithstanding the lack of an arbitration provision in the Installment Loan Contract, under the terms of the Buyer's Order Plaintiffs are required to arbitrate their claims against Defendant.

**THEREFORE**,

**IT IS ORDERED** that Defendant's First Amended Motion For Order to Arbitrate and to Stay Pending Arbitration (**Doc. 23**) is hereby GRANTED;

**IT IS FURTHER ORDERED** that this all proceedings in this case are STAYED pending arbitration of Plaintiffs' claims against Defendant;

**IT IS FURTHER ORDERED** that Defendant's initial Motion For Order to Arbitrate and to Stay Pending Arbitration, or in the Alternative for Recission and to Dismiss, filed October 28, 2002 (**Doc. 15**) is hereby denied as MOOT in light of the findings set forth above.

_____
UNITED STATES DISTRICT JUDGE

---

effectively supersedes and invalidates the arbitration provision in the Buyer's Order).